UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE
MDD_GLSchambers@mdd.uscourts.gov

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0627 PHONE
(301) 344-8434 FAX



July 16, 2021

Stephen F. Shea, Esquire
8730 Georgia Avenue, Suite B100
Silver Spring, MD 20910

Jennifer H. Stinnette, Esquire
Special Assistant United States Attorney
Social Security Administration
6401 Security Blvd., Room 617
Baltimore, MD 21235

Subject: *Lisa C. v. Saul*
Civil No. GLS 20-01179

Dear Counsel:

Pending before this Court are cross-motions for summary judgment. (ECF Nos. 12, 17). The Court must uphold the decision of the Social Security Administration ("SSA" or "the Agency") if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (2016); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* Upon review of the pleadings and the record, the Court finds that no hearing is necessary. Local Rule 105.6. For the reasons set forth below, I will deny the motions and remand the case back to the SSA for further consideration.

I. BACKGROUND

Plaintiff filed a Title II Application for Disability Insurance Benefits on October 7, 2016, alleging that her disability began on June 1, 2016. (Tr. 11). This claim was initially denied on March 23, 2017, and upon reconsideration, denied again on July 24, 2017. *Id.* Plaintiff's request for a hearing was granted and the hearing was conducted on February 25, 2019, by an Administrative Law Judge ("ALJ"). *Id.* On March 26, 2019, the ALJ found that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Social Security Act. (Tr. 11). On April 13, 2020, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final and reviewable decision of the SSA. (Tr. 1-6).

II. ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is deemed to have a disability if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. *See e.g., Barnhart v. Thomas,* 540 U.S. 20, 24-25(2003); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). The steps used by the ALJ are as follows: step one, assess whether a claimant has engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether a claimant's impairments meet the severity and durations requirements found in the regulations; step three, ascertain whether a claimant's medical impairment meets or equals an impairment listed in the regulations ("the Listings"). If the first three steps are not conclusive, i.e., a claimant's impairment is severe but does not meet one or more of the Listings, then the ALJ assesses the claimant's residual functional capacity ("RFC"). A claimant's RFC is the most that a claimant could do despite her/his limitations, through consideration of the claimant's "'medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two." *Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.945(a)). At step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her/his impairments; and at step five, the ALJ analyzes whether a claimant could perform any work other than what the claimant performed in the past.

At steps one through four, it is the claimant's burden to show that she is disabled. *Bowen v. Yuckert,* 482 U.S. 137, 140-42 (1987); *Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016). If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and, therefore, is not disabled. *Hunter v. Sullivan*, 993 F.3d 31, 35 (4th Cir. 1992).

Here, the ALJ evaluated Plaintiff's claim by following the sequential evaluation process outlined above. (Tr. 8-22). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2016, the alleged onset date of Plaintiff's disability. (Tr. 13). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: chronic fatigue syndrome ("CFS") and adrenal fatigue. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); (Tr. 14).

The ALJ found these impairments were severe because they "significantly limit[ed] the [Plaintiff's] ability to perform basic work activities required by SSR 85-28." (Tr. 14). However, at step three the ALJ also determined that none of Plaintiff's impairments or combination of impairments met or medically equaled one or more of the Listings. (Tr. 16-17). Recognizing those severe impairments, the ALJ next assessed Plaintiff's RFC. The ALJ determined that the Plaintiff had the RFC to perform light work as defined in 20 CFR § 404.1567(a), but with the following limitations:

*Lisa C. v. Saul*
Civil No. GLS 20-01179
July 16, 2021
Page 3

> she can only: occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, and scaffolds; should avoid concentrated exposure to hazards (machinery, heights, etc); and she requires the ability to periodically alternate between sitting and standing at irregular intervals but with the understanding that she would still be capable of remaining on task sufficiently to maintain satisfactory productivity levels.

(Tr. 17). A hearing was held, where a vocational expert ("VE") testified about whether a hypothetical person with the same age, education, and work experience as the Plaintiff with her RFC could perform Plaintiff's prior work as a software tester. (Tr. 20). The VE testified that this hypothetical individual could perform work as a software tester. (Tr. 20). Adopting the VE's conclusion, the ALJ determined that Plaintiff could perform work as a software tester despite her limitations. (Tr. 20).

In sum, the ALJ found that the Plaintiff was not disabled. (Tr. 21-22).

**III.   DISCUSSION**

In requesting summary judgment, Plaintiff contends that the ALJ's decision is not supported by substantial evidence for the following reasons: (1) the ALJ failed to perform a function-by-function assessment of her ability to "perform the physical and mental demands of work"; and (2) the ALJ erroneously evaluated the Plaintiff's subjective complaints about her ability to conduct her daily activities. (ECF No. 12-1, pp. 3-9). I find that Plaintiff's argument regarding the ALJ's erroneous evaluation of her subjective complaints to be persuasive. Accordingly, I find remand appropriate for the reasons set forth below.

Plaintiff argues that the ALJ "failed to provide an accurate and logical bridge to support his credibility determination." (ECF No. 12-1, p. 12). Although not clearly articulated, Plaintiff appears to advance two arguments. First, that the ALJ's opinion is misleading because he only cited to some of the activities of daily living that Plaintiff testified that she could perform while misstating others and ignoring her limitations. (*Id.*, pp. 10-12). Second, that the ALJ erroneously discredited Plaintiff's descriptions about the extent of her ability to perform those activities. (*Id.*). Therefore, the ALJ erred in finding that her activities of daily living were "not entirely consistent with her allegations of disability." (*Id.,* pp. 10, 12).

The SSA counters that the ALJ properly evaluated the Plaintiff's symptoms and supported his conclusion by articulating how the Plaintiff's medical records, medical history, and activities of daily living were inconsistent with the Plaintiff's subjective complaints. (ECF No. 17-1, pp. 8-9). However, as set forth more fully below, I do not find the SSA's argument persuasive because I find that the ALJ failed to properly evaluate the record evidence and consider Plaintiff's limited ability to conduct her activities of daily living. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("An ALJ may not consider the type of activities a claimant can perform without also

considering the extent to which she can perform them").

When evaluating a claimant's symptoms, an ALJ must follow a two-step evaluation process. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016); 20 C.F.R. § 404.1529. The ALJ must first "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms." *Id.* at *2. At this step, the ALJ considers whether objective medical evidence exists to support the conclusion that an impairment exists. *Id.* Next, at step two, after finding a medically determinable impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ is not required to find objective medical evidence to find that a claimant is disabled because "symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." 2016 WL 1119029, at *4. The claimant is not required to present objective evidence at this step. *Id.* In sum, the two-step process requires the ALJ to consider the entire case record, and must "not disregard [a claimant's] statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. *Arakas v. Comm'r, Soc. Sec. Admin*, 983 F.3d 83, 95 (4th Cir. 2020) (alteration in original) (citations omitted). Finally, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, [and] be consistent with and supported by the evidence." 2016 WL 1119029, at *9.

I find *Arakas* to be instructive here. In *Arakas*, the ALJ erroneously discredited the claimant's subjective complaints by "(1) selectively citing evidence from the record as well as misstating and mischaracterizing material facts, (2) finding the [claimant]'s complaints to be inconsistent with her daily activities; and (3) failing to consider [the]…unique characteristics [of the claimant's ailment] when reviewing [the claimant]'s medical records." 983 F.3d at 98. For example, the ALJ in *Arakas* misstated the claimant's testimony regarding the assistance that she gave to her sister and selectively cited medical records indicating an improvement in the claimant's condition while omitting records noting that the claimant "continued to suffer substantially with breakthrough pain" associated with fibromyalgia. *Id.* In addition, the ALJ failed to describe the extent to which the claimant could conduct her daily activities. *Id.* at 99. The court held that reading the claimant's record, as a whole, revealed that there were no inconsistencies between her subjective complaints and the daily activities that she performed. Therefore, the *Arakas* court held that the ALJ's finding that her "subjective complaints were inconsistent with her daily activities" was not supported by substantial evidence, as the selective consideration of the evidence meant that the ALJ did not "build an accurate bridge from the evidence to his conclusion." *Id.*

*Woods v. Berryhill*, *supra,* is similarly instructive. In *Woods*, the claimant argued that the ALJ erred in concluding that her statements regarding the intensity, persistence and limiting effects of her symptoms were not credible. *Id.* at 694. The ALJ supported his finding by stating that Woods' "daily activities [wer]e not those typically associated with an individual alleging the pain, severity, and limitations as posed by the claimant." *Id.* However, the *Woods* court found that the ALJ did not consider the claimant's statements about her limited ability to conduct her daily

*Lisa C. v. Saul*
Civil No. GLS 20-01179
July 16, 2021
Page 5

activities before arriving at a decision. *Id.* In its holding, the *Woods* court held that "[a]n ALJ may not consider the type of activities a claimant can perform without also considering the extent to which she can perform them." *Id.* at 694 (quoting *Brown v. Comm'r, Social Sec. Admin.*, 873 F.3d 251, 263 (4th Cir. 2017)) (internal quotation marks omitted). On remand, the ALJ was instructed to "consider not just the *type* of Woods' daily activities, but also *the extent* to which she can perform them in assessing her credibility." *Id.* at 695 (emphasis in original). Thus, *Arakas* and *Woods* stand, in part, for the proposition that an ALJ must consider and analyze a claimant's subjective claims without misstating, mischaracterizing, cherry-picking, or selectively citing evidence from the record in order to reach a conclusion.

Analyzing the facts of this case pursuant to *Arakas* and *Woods*, I find that remand is required. At step one of the two-step process, the ALJ found that Plaintiff suffered from CFS and adrenal fatigue and that Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms." (Tr. 18). However, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record…" (Tr. 18). Therefore, the ALJ determined that "the objective evidence in the record supports the limitation of light work with reduced postural movements and environmental exposure, and sit/stand option." (Tr. 18).

However, at step two, the ALJ improperly discredited the Plaintiff's statements about her ability to perform daily activities. In effect, the ALJ cherry-picked, misstated, and mischaracterized facts from the record to support his conclusions. I offer a few examples. First, the ALJ highlighted the Plaintiff's improvements during her visit to her physician Kisha Davis, M.D. on January 3, 2019, but made no mention of Dr. Davis' observation during that same visit that the Plaintiff was "likely still unable to keep up with the demands of working more than a few hours/day," (Tr. 550), and that the Plaintiff experienced temporary "bursts of improvements and then level[ed] off." (Tr. 549). Second, when evaluating the Plaintiff's credibility, the ALJ found that despite Plaintiff's claim that she did not read or watch television because of her vision problems, she did both during her psychiatric evaluation. (Tr. 19). However, this is a misstatement of the record; Plaintiff testified that she disliked reading because it made her eyes tired and she disliked watching television because it bothers her eyes for a while. (Tr. 62). Plaintiff never claimed that she did not read or watch television, but rather testified to her limited ability to engage in such activities. (Tr. 62). Third, similar to the ALJs in *Arakas* and *Woods*, the ALJ here "selectively cited evidence concerning tasks which [Plaintiff] was capable of performing and improperly disregarded [the Plaintiff's] qualifying statements" by failing to discuss the Plaintiff's stated limitations regarding her abilities. *Arakas*, 983 F.3d at 100. For example, the ALJ mentioned that the Plaintiff was able to cook every third day, (Tr. 18), but did not appear to consider Plaintiff's testimony that she did this so that she would have leftovers and the ability to conserve energy for days when she had other commitments (such as visiting her doctor). (Tr. 63). The ALJ also stated that Plaintiff testified that she rarely needed a nap during the day. (Tr. 18). However, the ALJ failed to mention that Plaintiff also testified that she "hate[d] to sleep during the day, because when [she did] [she woke] up with extreme anxiety." (Tr. 78). Similarly, the ALJ made mention of the Plaintiff's decision to go back to school, write a book and further her

*Lisa C. v. Saul*
Civil No. GLS 20-01179
July 16, 2021
Page 6

life coaching business, (Tr.18), but failed to mention that the Plaintiff stated that she had been unable to accomplish any of these tasks after she fell ill. (Tr. 66).

In sum, I find that the ALJ selectively cited evidence from the record and did not acknowledge the Plaintiff's qualifying statements about the limited extent to which she could perform her daily activities. By so doing, the ALJ improperly discredited Plaintiff's statements, thereby ignoring subjective evidence at step two of the evaluation process. Thus, consistent with *Arakas* and *Woods*, I cannot conclude that the ALJ built an "accurate and logical bridge" between all of the evidence and his conclusion that she was able to perform light work and was not disabled. Remand is required.

On remand, the ALJ should provide a clearer narrative discussion that incorporates the entire case record, and should explain how the evidence supports his conclusions, ensuring that there is an accurate and logical bridge between the evidence and any conclusion made.

Because this case is being remanded on other grounds, the Court will not address Plaintiff's remaining contentions that the ALJ failed to perform a function-by-function assessment of her ability to "perform the physical and mental demands of work" (ECF No. 12-1, pp 3-9).

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, (ECF No. 12), is DENIED and Defendant's Motion for Summary Judgment, (ECF No. 17), is DENIED. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk of the Court is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely,

_____/s/_____
The Honorable Gina L. Simms
United States Magistrate Judge